# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA
## OKLAHOMA CITY DIVISION

JAMES ISAACS, individually and on behalf of all others similarly situated,

v.

TOTAL AGGREGATE, LLC; TANDEM TRUCKING, LLC; LAURIE RANNEY KYLES; KIRBY KYLES; and KASEY KYLES

**Case No.** _CIV-21-945-PRW_____

FLSA Collective Action

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Isaacs and Opt-in Plaintiffs bring this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2.     Defendants failed to pay Isaacs, Opt-in Plaintiffs, and other hourly workers like them, overtime as required by federal law.

3.     Instead, Defendants paid Isaacs, Opt-in Plaintiffs, and the workers like them, the same hourly rate, even when they were working more than 40 hours in a workweek.

4.     This collective action seeks to recover the unpaid wages and other damages owed to Isaacs, Opt-in Plaintiffs, and other hourly workers for Defendants.

### JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

7.      Isaacs and Opt-in Plaintiffs performed work for Defendants in this District and Division.

PARTIES

8.      **James Isaacs** was, at all relevant times, an employee of Defendants.

9.      Isaacs was an hourly employee of Defendants.

10.     Isaacs worked for Defendants from August 23, 2019, through September 23, 2020.

11.     Isaacs' written consent is attached as Exhibit 1.

12.     Isaacs was paid at his regular hourly rate for all hours  worked for Defendants, even when working over 40 hours in a week.

13.     Isaacs was paid straight-time for the overtime hours worked for Defendants.

14.     The collective of similarly situated employees or potential collective members sought to be certified is defined as:

> **All hourly employees of Defendants (including those who worked through Total Trucking, Inc.) who were, at any point in the past three years, paid "straight time for overtime."**

15.     **Total Aggregate, LLC** ("Total Aggregate") is an Oklahoma limited liability company.

16.     Total Aggregate's headquarters and principal place of business are in Canadian County, Oklahoma.

17.     Total Aggregate may be served by service upon its registered agent, **Kirby Kyles, 608 Woodlawn, Yukon, OK 73099**, or by any other method authorized by law.

18.     **Tandem Trucking, LLC** ("Tandem Trucking") is an Oklahoma limited liability company.

19.     Tandem Trucking's headquarters and principal place of business are in Oklahoma County, Oklahoma.

20.     Tandem Trucking may be served by service upon its registered agent, **Kasey Kyles, 1034 Gladys Way, Mustang, OK 73064**, or by any other method authorized by law.

21.     **Laurie Ranney Kyles** is a natural person who is a resident and citizen of Oklahoma.

22.     Laurie Kyles may be served by service of process upon her at **608 Woodlawn Dr., Yukon, OK 73099**, or wherever she may be found.

23.     **Kirby Kyles** is a natural person who is a resident and citizen of Oklahoma.

24.     Kirby Kyles may be served by service of process upon him at **608 Woodlawn Dr., Yukon, OK 73099**, or wherever he may be found.

25.     Kirby Kyles was the defendant in *U.S. v. Kirby Lynn Kyles*, No. 5:09-cv-00177-HE, in the United States District Court for the Western District of Oklahoma.

26.     In *U.S. v. Kirby Lynn Kyles*, Kirby Kyles entered a plea of guilty to bankruptcy fraud, 18 U.S.C. § 152(2).

27.     One or more of the elements of bankruptcy fraud, 18 U.S.C. § 152(2), include a dishonest act.

28.     Bankruptcy fraud, 18 U.S.C. § 152(2), is a crime involving a dishonest act.

29.     One or more of the elements of bankruptcy fraud, 18 U.S.C. § 152(2), include a false statement.

30.     Bankruptcy fraud, 18 U.S.C. § 152(2), is a crime involving a false statement.

31.     One the elements of bankruptcy fraud, 18 U.S.C. § 152(2), is that the account made by the accused was materially false.

32. One the elements of bankruptcy fraud, 18 U.S.C. § 152(2), is that the account made by the accused was made knowingly.

33. One the elements of bankruptcy fraud, 18 U.S.C. § 152(2), is that the account made by the accused was made fraudulently.

34. The crime of bankruptcy fraud, 18 U.S.C. § 152(2), is a felony.

35. The crime of bankruptcy fraud, 18 U.S.C. § 152(2), is punishable by imprisonment for more than one year.

36. Kirby Kyles was released from confinement related to *U.S. v. Kirby Lynn Kyles* on November 8, 2013.

37. **Kasey Kyles** is a natural person who is a resident and citizen of Oklahoma.

38. Kasey Kyles may be served by service of process upon him at **1034 Gladys Way, Mustang, OK 73064**, or wherever he may be found.

### Joint Employment

39. Total Trucking, Inc. ("Total Trucking") is an Oklahoma corporation.

40. At all relevant times, Isaacs was an employee of Total Trucking.

41. At all relevant times, Opt-in Plaintiffs were employees of Total Trucking.

42. At all relevant times, the Putative Collective Members were employees of Total Trucking.

43. At all relevant times, Isaacs was an employee of Total Aggregate.

44. At all relevant times, Opt-in Plaintiffs were employees of Total Aggregate.

45. At all relevant times, the Putative Collective Members were employees of Total Aggregate.

46.     Total Trucking and Total Aggregate employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

47.     Total Trucking and Total Aggregate are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

48.     At all relevant times, Isaacs was an employee of Tandem Trucking.

49.     At all relevant times, Opt-in Plaintiffs were employees of Tandem Trucking.

50.     At all relevant times, the Putative Collective Members were employees of Tandem Trucking.

51.     Total Trucking and Tandem Trucking employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

52.     Total Trucking and Tandem Trucking are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

53.     At all relevant times, Isaacs was an employee of Laurie Kyles.

54.     At all relevant times, Opt-in Plaintiffs were employees of Laurie Kyles.

55.     At all relevant times, the Putative Collective Members were employees of Laurie Kyles.

56.     At all relevant times, Laurie Kyles was responsible for paying wages to Isaacs.

57.     At all relevant times, Laurie Kyles was responsible for paying wages to Opt-in Plaintiffs.

58.     At all relevant times, Laurie Kyles was responsible for paying wages to Putative Collective Members.

59.     At all relevant times, Laurie Kyles was responsible for determining Isaacs' work schedules.

60.    At all relevant times, Laurie Kyles was responsible for determining Opt-in Plaintiffs' work schedules.

61.    At all relevant times, Laurie Kyles was responsible for determining work Putative Collective Members' work schedules.

62.    At all relevant times, Laurie Kyles was President of Total Trucking.

63.    At all relevant times, Laurie Kyles was Secretary of Total Trucking.

64.    At all relevant times, Laurie Kyles was an owner of Total Trucking.

65.    At all relevant times, Laurie Kyles was an officer of Total Trucking.

66.    At all relevant times, Laurie Kyles exerted operational control over Total Trucking.

67.    At all relevant times, Laurie Kyles had the authority to set pay practices for Total Trucking employees.

68.    At all relevant times, Laurie Kyles had the authority to determine the amount paid to Total Trucking employees.

69.    At all relevant times, Laurie Kyles had the authority to determine the schedules worked by Total Trucking employees.

70.    At all relevant times, Laurie Kyles had the authority to hire employees for Total Trucking.

71.    At all relevant times, Laurie Kyles had the authority to fire employees for Total Trucking.

72.    At all relevant times, Laurie Kyles had the authority to discipline employees for Total Trucking.

73.     At all relevant times, Laurie Kyles had the authority to supervise employees for Total Trucking.

74.     The employees that Laurie Kyles could hire, fire, discipline, and supervise for Total Trucking included Isaacs, Opt-in Plaintiffs, and the Potential Collective Members.

75.     Total Trucking and Laurie Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

76.     Total Trucking and Laurie Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

77.     At all relevant times, Laurie Kyles was an owner of Total Aggregate.

78.     At all relevant times, Laurie Kyles was a manager of Total Aggregate.

79.     At all relevant times, Laurie Kyles was a member of Total Aggregate.

80.     At all relevant times, Laurie Kyles exerted operational control over Total Aggregate.

81.     At all relevant times, Laurie Kyles had the authority to set pay practices for Total Aggregate employees.

82.     At all relevant times, Laurie Kyles had the authority to determine the amount paid to Total Aggregate employees.

83.     At all relevant times, Laurie Kyles had the authority to determine the schedules worked by Total Aggregate employees.

84.     At all relevant times, Laurie Kyles had the authority to hire employees for Total Aggregate.

85.     At all relevant times, Laurie Kyles had the authority to hire employees for Total Aggregate.

86.     At all relevant times, Laurie Kyles had the authority to fire employees for Total Aggregate.

87.     At all relevant times, Laurie Kyles had the authority to discipline employees for Total Aggregate.

88.     At all relevant times, Laurie Kyles had the authority to supervise employees for Total Aggregate.

89.     The employees that Laurie Kyles could hire, fire, discipline, and supervise for Total Aggregate included Isaacs, Opt-in Plaintiffs, and the Potential Collective Members.

90.     Total Aggregate and Laurie Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

91.     Total Aggregate and Laurie Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

92.     At all relevant times, Isaacs was an employee of Kirby Kyles.

93.     At all relevant times, Opt-in Plaintiffs were employees of Kirby Kyles.

94.     At all relevant times, the Putative Collective Members were employees of Kirby Kyles.

95.     At all relevant times, Kirby Kyles was responsible for paying wages to Isaacs.

96.     At all relevant times, Kirby Kyles was responsible for paying wages to Opt-in Plaintiffs.

97.     At all relevant times, Kirby Kyles was responsible for paying wages to Putative Collective Members.

98.     At all relevant times, Kirby Kyles was responsible for determining Isaacs' work schedules.

99.     At all relevant times, Kirby Kyles was responsible for determining Opt-in Plaintiffs' work schedules.

100.    At all relevant times, Kirby Kyles was responsible for determining Putative Collective Members' work schedules.

101.    At all relevant times, Kirby Kyles was an owner of Total Trucking.

102.    At all relevant times, Kirby Kyles was an officer of Total Trucking.

103.    At all relevant times, Kirby Kyles exerted operational control over Total Trucking.

104.    At all relevant times, Kirby Kyles had the authority to set pay practices for Total Trucking employees.

105.    At all relevant times, Kirby Kyles had the authority to determine the amount paid to Total Trucking employees.

106.    At all relevant times, Kirby Kyles had the authority to determine the schedules worked by Total Trucking employees.

107.    At all relevant times, Kirby Kyles had the authority to hire employees for Total Trucking.

108.    At all relevant times, Kirby Kyles had the authority to fire employees for Total Trucking.

109.    At all relevant times, Kirby Kyles had the authority to discipline employees for Total Trucking.

110.    At all relevant times, Kirby Kyles had the authority to supervise employees for Total Trucking.

111.	The employees that Kirby Kyles could hire, fire, discipline, and supervise for Total Trucking included Isaacs, Opt-in Plaintiffs, and the Potential Collective Members.

112.	For example, Kirby Kyles fired Bayne.

113.	Total Trucking and Kirby Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

114.	Total Trucking and Kirby Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

115.	At all relevant times, Kirby Kyles was an owner of Total Aggregate.

116.	At all relevant times, Kirby Kyles was a manager of Total Aggregate.

117.	At all relevant times, Kirby Kyles was a member of Total Aggregate.

118.	At all relevant times, Kirby Kyles exerted operational control over Total Aggregate.

119.	At all relevant times, Kirby Kyles had the authority to set pay practices for Total Aggregate employees.

120.	At all relevant times, Kirby Kyles had the authority to determine the amount paid to Total Aggregate employees.

121.	At all relevant times, Kirby Kyles had the authority to determine the schedules worked by Total Aggregate employees.

122.	At all relevant times, Kirby Kyles had the authority to hire employees for Total Aggregate.

123.	At all relevant times, Kirby Kyles had the authority to fire employees for Total Aggregate.

124.     At all relevant times, Kirby Kyles had the authority to discipline employees for Total Aggregate.

125.     At all relevant times, Kirby Kyles had the authority to supervise employees for Total Aggregate.

126.     The employees that Kirby Kyles could hire, fire, discipline, and supervise for Total Aggregate included Isaacs, Opt-in Plaintiffs, and the Potential Collective Members.

127.     Total Aggregate and Kirby Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

128.     Total Aggregate and Kirby Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

129.     At all relevant times, Isaacs was an employee of Kasey Kyles.

130.     At all relevant times, Opt-in Plaintiffs were employees of Kasey Kyles.

131.     At all relevant times, the Putative Collective Members were employees of Kasey Kyles.

132.     At all relevant times, Kasey Kyles was an owner of Total Trucking.

133.     At all relevant times, Kasey Kyles was an officer of Total Trucking.

134.     At all relevant times, Kasey Kyles exerted operational control over Total Trucking.

135.     At all relevant times, Kasey Kyles had the authority to determine the schedules worked by Total Trucking employees.

136.     At all relevant times, Kasey Kyles had the authority to hire employees for Total Trucking.

137.    At all relevant times, Kasey Kyles had the authority to hire employees for Total Trucking.

138.    At all relevant times, Kasey Kyles had the authority to fire employees for Total Trucking.

139.    At all relevant times, Kasey Kyles had the authority to discipline employees for Total Trucking.

140.    At all relevant times, Kasey Kyles had the authority to supervise employees for Total Trucking.

141.    The employees that Kasey Kyles could hire, fire, discipline, and supervise for Total Trucking included Isaacs, Opt-in Plaintiffs, and the Potential Collective Members.

142.    Total Trucking and Kasey Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

143.    Total Trucking and Kasey Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

144.    At all relevant times, Kasey Kyles was an owner of Tandem Trucking.

145.    At all relevant times, Kasey Kyles was a manager of Tandem Trucking.

146.    At all relevant times, Kasey Kyles was a member of Tandem Trucking.

147.    At all relevant times, Kasey Kyles exerted operational control over Tandem Trucking.

148.    At all relevant times, Kasey Kyles had the authority to set pay practices for Tandem Trucking employees.

149.    At all relevant times, Kasey Kyles had the authority to determine the amount paid to Tandem Trucking employees.

150.    At all relevant times, Kasey Kyles had the authority to determine the schedules worked by Tandem Trucking employees.

151.    At all relevant times, Kasey Kyles had the authority to hire employees for Tandem Trucking.

152.    At all relevant times, Kasey Kyles had the authority to hire employees for Tandem Trucking.

153.    At all relevant times, Kasey Kyles had the authority to fire employees for Tandem Trucking.

154.    At all relevant times, Kasey Kyles had the authority to discipline employees for Tandem Trucking.

155.    At all relevant times, Kasey Kyles had the authority to supervise employees for Tandem Trucking.

156.    The employees that Kasey Kyles could hire, fire, discipline, and supervise for Tandem Trucking included Isaacs, Opt-in, Plaintiffs and the Potential Collective Members.

157.    Tandem Trucking and Kasey Kyles employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

158.    Tandem Trucking and Kasey Kyles are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

159.    Total Trucking and Defendants employed and/or jointly employed Isaacs, Opt-in Plaintiffs, and the Putative Collective Members.

160.    Total Trucking and Defendants are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

161.    Defendants were the employers of Isaacs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

162.    Defendants were the employers of Opt-in Plaintiffs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

163.    Defendants were and are employers of the Putative Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

164.    Defendants were and are part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

165.    During at least the last three years, Defendants have had gross annual sales in excess of $500,000.

166.    Defendants were and are part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

167.    Defendants employ many workers, including Isaacs and Opt-in Plaintiffs, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

168.    The goods and materials handled, sold, or otherwise worked on by Isaacs, Opt-in Plaintiffs, and other employees of Defendants and that have been moved in interstate commerce include, but are not limited to, motor vehicles and their component parts.

FACTS

169.    Defendants provide hauling services for dirt, rock, and earth in and around Oklahoma City.

170. Isaacs and Opt-in Plaintiffs were employed as drivers providing hauling services to Defendants' clients and customers.

171. Isaacs and Opt-in Plaintiffs drove a dump truck to and from worksites.

172. Isaacs and Opt-in Plaintiffs would transport dirk, rock, and earth to and from worksites.

173. None of the items Isaacs or Opt-in Plaintiffs would transport are hazardous.

174. Isaacs and Opt-in Plaintiffs' trucks did not have a hazard placard.

175. Isaacs and Opt-in Plaintiffs were hourly employees of Defendants.

176. Defendants did not pay Isaacs or Opt-in Plaintiffs a salary.

177. Defendants did not pay Isaacs or Opt-in Plaintiffs on a fee basis.

178. Defendants paid Isaacs and Opt-in Plaintiffs by the hour.

179. If Isaacs or any Opt-in Plaintiff did not work an hour, they did not get paid.

180. Neither Isaacs nor any Opt-in Plaintiff were paid a guaranteed minimum amount of money.

181. Neither Isaacs nor any Opt-in Plaintiff were paid for a guaranteed minimum number of hours.

182. Isaacs and Opt-in Plaintiffs reported the hours they worked to Defendants on a regular basis.

183. Isaacs and Opt-in Plaintiffs' hours are reflected in Defendants' records.

184. Isaacs and Opt-in Plaintiffs often worked more than 40 hours in a week.

185. Even when Isaacs and Opt-in Plaintiffs worked more than 40 hours in a week, they were still paid at their regular hourly rates, without any overtime premium.

186. For example, Defendants paid Isaacs $17 per hour for drive time.

187. During the week of August 20, 2020, Isaacs had 55 hours of drive time for Defendants.

188. Isaacs was paid $17 per hour for each of those 55 drive time hours worked during the week of August 20, 2020.

189. And Isaacs worked 70 drive time hours during the week of September 10, 2020.

190. But Isaacs was paid only $17 per hour for each drive time hour worked during the week of September 10, 2020.

191. Thus, rather than receiving time-and-a-half as required by the FLSA, Isaacs and Opt-in Plaintiffs only received "straight-time" pay for overtime hours.

192. This "straight-time-for-overtime" payment scheme violates the FLSA.

193. Isaacs and Opt-in Plaintiffs worked out of Defendants' facility in Oklahoma City.

194. At all relevant times, Isaacs and Opt-in Plaintiffs did not drive for Defendants outside of the Oklahoma City area.

195. As part of their driving for Defendants, neither Isaacs nor any Opt-in Plaintiff did not drive to any other states.

196. The other drivers, like Isaacs and Opt-in Plaintiffs, who performed hauling work for Defendants, did not drive out of state.

197. None of these drivers were asked to travel out of state.

198. The Federal Motor Carrier Safety Administration (FMCSA) certified Total Aggregate as an intrastate carrier.

199. The FMCSA certified Total Aggregate as a non-hazardous materials carrier.

200. The FMCSA certified Tandem Trucking as an intrastate carrier.

201. The FMCSA certified Tandem Trucking as a non-hazardous materials carrier.

202. As part of Total Aggregate's Motor Carrier Identification Report to the FMCSA, Kirby Kyles swore under oath that Total Aggregate's drivers did not drive outside of Oklahoma.

203. As part of Total Aggregate's Motor Carrier Identification Report to the FMCSA, Laurie Kyles swore under oath that Total Aggregate's drivers did not drive outside of Oklahoma.

204. Defendants were well aware of the overtime requirements of the FLSA.

205. Defendants knew Isaacs and Opt-in Plaintiffs were working more than 40 hours per week.

206. Defendants knew other hourly workers were working more than 40 hours per week.

207. Defendants nonetheless failed to pay proper overtime to certain employees, such as Isaacs and Opt-in Plaintiffs.

208. Defendants knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

209. Defendants' failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

210. On October 1, 2020, Isaacs filed suit against Total Trucking.

211. Isaacs' suit was styled, *Isaacs v. Total Trucking, Inc.* (*Isaacs 1*), No. 5:20-00996-J, in the Western District of Oklahoma.

212. At no time was any party a defendant in *Isaacs 1* other than Total Trucking.

213. Total Aggregate was never a defendant in *Isaacs 1*.

214.     Tandem Trucking was never a defendant in *Isaacs 1*.

215.     Laurie Kyles was never a defendant in *Isaacs 1*.

216.     Kirby Kyles was never a defendant in *Isaacs 1*.

217.     Kasey Kyles was never a defendant in *Isaacs 1*.

218.     At the time the *Isaacs 1* plaintiffs accepted the defendant's offer of judgment on September 1, 2020, only Total Trucking, Inc. was a defendant. *Isaacs 1*, ECF No. 47.

219.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* was drafted by Total Trucking, Inc. *Isaacs 1*, ECF No. 47-1.

220.     The *Isaacs 1* plaintiffs did not draft the offer of judgment from Total Trucking, Inc. *Isaacs 1*, ECF No. 47-1.

221.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* did not allocate any specific amount or portion toward costs. *Isaacs 1*, ECF No. 47-1.

222.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* did not allocate any specific amount or portion toward attorney fees. *Isaacs 1*, ECF No. 47-1.

223.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* did not allocate any specific amount or portion toward liens. *Isaacs 1*, ECF No. 47-1.

224.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* did not allocate any specific amount or portion toward expenses. *Isaacs 1*, ECF No. 47-1.

225.     The offer of judgment accepted by the plaintiffs in *Isaacs 1* did not allocate any specific amount or portion toward interest. *Isaacs 1*, ECF No. 47-1.

226.     At the time the court entered judgment in *Isaacs 1* on September 2, 2020, only Total Trucking, Inc. was a defendant. *Isaacs 1*, ECF No. 48.

227.    The judgment in *Isaacs 1* referred only to the defendant in that lawsuit, Total Trucking, Inc. *Isaacs 1*, ECF No. 48.

228.    Total Aggregate was not a party to the judgment entered in *Isaacs 1*. ECF No. 48.

229.    Tandem Trucking was not a party to the judgment entered in *Isaacs 1*. ECF No. 48.

230.    Laurie Kyles was not a party to the judgment entered in *Isaacs 1*. ECF No. 48.

231.    Kirby Kyles was not a party to the judgment entered in *Isaacs 1*. ECF No. 48.

232.    Kasey Kyles was not a party to the judgment entered in *Isaacs 1*. ECF No. 48.

233.    *Isaacs 1* was filed as a putative collective action. *Isaacs I*, ECF No. 1.

234.    *Isaacs 1* was conditionally certified as a collective action on January 25, 2021. *Isaacs 1*, ECF No. 20.

235.    Isaacs' consent in *Isaacs 1* was filed on October 1, 2020. *Isaacs 1*, ECF No. 1-1.

236.    Based on time and pay summaries provided by Defendants, Isaacs is owed a total of $3,468.88 in unpaid overtime wages for work performed for Defendants from August 23, 2019, through September 23, 2020.

237.    Isaacs is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

238.    **John Bayne** was, at all relevant times, an employee of Defendants.

239.    Bayne was an hourly employee of Defendants.

240.    Bayne worked for Defendants from August 20, 2019, through November 14, 2019.

241.     Bayne filed a consent to opt into *Isaacs 1* on November 3, 2020. *Isaacs I*, ECF No. 5.

242.     Bayne's written consent to join this action is attached as Exhibit 2.

243.     Bayne was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

244.     Bayne was paid straight-time for the overtime hours he worked for Defendants.

245.     Based on time and pay summaries provided by Defendants, Bayne is owed a total of $391.88 in unpaid overtime wages for work performed for Defendants from August 20, 2019, through November 14, 2019.

246.     Bayne is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

247.     **Lance Bishop** was and has been, at all relevant times, an employee of Defendants.

248.     Bishop was and has been an hourly employee of Defendants.

249.     Bishop began working for Defendants on September 16, 2016.

250.     Bishop filed a consent to opt into *Isaacs 1* on February 12, 2021. *Isaacs I*, ECF No.25.

251.     Bishop's written consent to join this action is attached as Exhibit 3.

252.     Bishop has been paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

253.     Bishop has been paid straight-time for the overtime hours he worked for Defendants.

254.     Based on time and pay summaries provided by Defendants, Bishop is owed at least $5,110.00 in unpaid overtime wages for work performed for Defendants beginning February 2018.

255.     Based on time and pay summaries provided by Defendants, Bishop is owed at least $5,696.50 in unpaid overtime wages for work performed for Defendants beginning October 1, 2017.

256.     Defendants have not provided time and pay summaries for Bishop for any period after September 2020.

257.     Defendants have not provided all time and pay summaries for Bishop's work.

258.     Bishop is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

259.     **Samuel Cordes** was, at all relevant times, an employee of Defendants.

260.     Cordes was an hourly employee of Defendants.

261.     Cordes worked for Defendants from February 22, 2020, through November 30, 2020.

262.     Cordes filed a consent to opt into *Isaacs 1* on June 4, 2021. *Isaacs I*, ECF No. 35.

263.     Cordes's written consent to join this action is attached as Exhibit 4.

264.     Cordes was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

265.     Cordes was paid straight-time for the overtime hours he worked for Defendants.

266.     Based on time and pay summaries provided by Defendants, Cordes is owed a total of $418.88 in unpaid overtime wages for work performed for Defendants from February 22, 2020, through November 30, 2020.

267.     Cordes is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

268.     **Stephen Dobbins** was, at all relevant times, an employee of Defendants.

269.     Dobbins was an hourly employee of Defendants.

270.     Dobbins worked for Defendants from April 19, 2019, through September 27, 2019.

271.     Dobbins filed a consent to opt into *Isaacs 1* on March 4, 2021. *Isaacs I*, ECF No. 29.

272.     Dobbins' written consent to join this action is attached as Exhibit 5.

273.     Dobbins was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

274.     Dobbins was paid straight-time for the overtime hours he worked for Defendants.

275.     Based on time and pay summaries provided by Defendants, Dobbins is owed a total of $761.25 in unpaid overtime wages for work performed for Defendants from April 19, 2019, through September 27, 2019.

276.     Dobbins is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

277.     **Donald Dubach** was, at all relevant times, an employee of Defendants.

278.     Dubach was an hourly employee of Defendants.

279. Dubach worked for Defendants from March 14, 2019, through May 7, 2019.

280. Dubach filed a consent to opt into *Isaacs 1* on March 5, 2021. *Isaacs I*, ECF No. 30.

281. Dubach's written consent to join this action is attached as Exhibit 6.

282. Dubach was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

283. Dubach was paid straight-time for the overtime hours he worked for Defendants.

284. Based on time and pay summaries provided by Defendants, Dubach is owed a total of $78.75 in unpaid overtime wages for work performed for Defendants from March 14, 2019, through May 7, 2019.

285. Dubach is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

286. **Robert Freeman** was, at all relevant times, an employee of Defendants.

287. Robert Freeman was an hourly employee of Defendants.

288. Robert Freeman worked for Defendants from May 3, 2019, through May 29, 2019.

289. Robert Freeman filed a consent to opt into *Isaacs 1* on November 2, 2020. *Isaacs I*, ECF No. 5.

290. Robert Freeman's written consent to join this action is attached as Exhibit 7.

291. Robert Freeman was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

292.     Robert Freeman was paid straight-time for the overtime hours he worked for Defendants.

293.     Based on time and pay summaries provided by Defendants, Robert Freeman is owed a total of $63.75 in unpaid overtime wages for work performed for Defendants from May 3, 2019, through May 29, 2019.

294.     Robert Freeman is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

295.     **Teresa Freeman** was, at all relevant times, an employee of Defendants.

296.     Teresa Freeman was an hourly employee of Defendants.

297.     Teresa Freeman worked for Defendants from March 29, 2019, through March 12, 2020.

298.     Teresa Freeman filed a consent to opt into *Isaacs I* on November 3, 2020. *Isaacs I*, ECF No. 5.

299.     Teresa Freeman's written consent to join this action is attached as Exhibit 8.

300.     Teresa Freeman was paid at her regular hourly rate for all hours she worked for Defendants, even when working over 40 hours in a week.

301.     Teresa Freeman was paid straight-time for the overtime hours she worked for Defendants.

302.     Based on time and pay summaries provided by Defendants, Teresa Freeman is owed a total of $2,662.88 in unpaid overtime wages for work performed for Defendants from March 29, 2019, through March 12, 2020.

303.     Teresa Freeman is entitled to an amount equal to her unpaid backwages for liquidated damages under the FLSA.

304.   **Aaron Good** was, at all relevant times, an employee of Defendants.

305.   Good was an hourly employee of Defendants.

306.   Good worked for Defendants from October 15, 2020, through November 19, 2020.

307.   Good filed a consent to opt into *Isaacs 1* on February 10, 2021. *Isaacs I*, ECF No. 24.

308.   Good's written consent to join this action is attached as Exhibit 9.

309.   Good was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

310.   Good was paid straight-time for the overtime hours he worked for Defendants.

311.   Based on time and pay summaries provided by Defendants, Good is owed a total of $27.63 in unpaid overtime wages for work performed for Defendants from October 15, 2020, through November 19, 2020.

312.   Good is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

313.   **Juan Hernandez** was, at all relevant times, an employee of Defendants.

314.   Hernandez was an hourly employee of Defendants.

315.   Hernandez worked for Defendants from December 1, 2017, through May 9, 2018.

316.   Hernandez filed a consent to opt into *Isaacs 1* on March 8, 2021. *Isaacs I*, ECF No. 31.

317.   Hernandez's written consent to join this action is attached as Exhibit 10.

318. Hernandez was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

319. Hernandez was paid straight-time for the overtime hours he worked for Defendants.

320. Based on time and pay summaries provided by Defendants, Hernandez is owed a total of $185.63 in unpaid overtime wages for work performed for Defendants from December 1, 2017, through May 9, 2018.

321. Hernandez is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

322. **Brandon Hurley** was, at all relevant times, an employee of Defendants.

323. Hurley was an hourly employee of Defendants.

324. Hurley worked for Defendants from March 15, 2020, through August 5, 2020.

325. Hurley filed a consent to opt into *Isaacs I* on February 24, 2021. *Isaacs I*, ECF No. 28.

326. Hurley's written consent to join this action is attached as Exhibit 11.

327. Hurley was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

328. Hurley was paid straight-time for the overtime hours he worked for Defendants.

329. Based on time and pay summaries provided by Defendants, Hurley is owed a total of $16.88 in unpaid overtime wages for work performed for Defendants from March 15, 2020, through August 5, 2020.

330. Hurley is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

331.   **Anthony Jackson** was, at all relevant times, an employee of Defendants.

332.   Anthony Jackson was an hourly employee of Defendants.

333.   Anthony Jackson worked for Defendants from February 29, 2020, through July 10, 2020.

334.   Anthony Jackson filed a consent to opt into *Isaacs 1* on February 9, 2021. *Isaacs I*, ECF No. 23.

335.   Anthony Jackson's written consent to join this action is attached as Exhibit 12.

336.   Anthony Jackson was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

337.   Anthony Jackson was paid straight-time for the overtime hours he worked for Defendants.

338.   Based on time and pay summaries provided by Defendants, Anthony Jackson is owed a total of $97.75 in unpaid overtime wages for work performed for Defendants from February 29, 2020, through July 10, 2020.

339.   Anthony Jackson is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

340.   **James Jackson** was, at all relevant times, an employee of Defendants.

341.   James Jackson was an hourly employee of Defendants.

342.   James Jackson worked for Defendants from January 21, 2015, through October 3, 2019.

343.   James Jackson filed a consent to opt into *Isaacs 1* on February 16, 2021. *Isaacs I*, ECF No.26.

344.   James Jackson's written consent to join this action is attached as Exhibit 13.

345. James Jackson was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

346. James Jackson was paid straight-time for the overtime hours he worked for Defendants.

347. Based on time and pay summaries provided by Defendants, James Jackson is owed a total of $1,709.81 in unpaid overtime wages for work performed for Defendants from October 1, 2017, through October 3, 2019.

348. James Jackson is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

349. **Roger Jackson** was, at all relevant times, an employee of Defendants.

350. Roger Jackson was an hourly employee of Defendants.

351. Roger Jackson worked for Defendants from October 10, 2019, through May 18, 2020.

352. Roger Jackson filed a consent to opt into *Isaacs I* on February 9, 2021. *Isaacs I*, ECF No. 23.

353. Roger Jackson's written consent to join this action is attached as Exhibit 14.

354. Roger Jackson was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

355. Roger Jackson was paid straight-time for the overtime hours he worked for Defendants.

356. Based on time and pay summaries provided by Defendants, Roger Jackson is owed a total of $531.25 in unpaid overtime wages for work performed for Defendants from October 10, 2019, through May 18, 2020.

357. Roger Jackson is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

358. **Aaron Lane** was, at all relevant times, an employee of Defendants.

359. Lane was an hourly employee of Defendants.

360. Lane worked for Defendants from November 15, 2018, through June 24, 2020.

361. Lane filed a consent to opt into *Isaacs 1* on February 23, 2021. *Isaacs I*, ECF No. 27.

362. Lane's written consent to join this action is attached as Exhibit 15.

363. Lane was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

364. Lane was paid straight-time for the overtime hours he worked for Defendants.

365. Based on time and pay summaries provided by Defendants, Lane is owed a total of $1,856.25 in unpaid overtime wages for work performed for Defendants from November 15, 2018, through June 24, 2020.

366. Lane is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

367. **Matthew Reinhardt** was, at all relevant times, an employee of Defendants.

368. Reinhardt was an hourly employee of Defendants.

369. Reinhardt worked for Defendants from September 26, 2018, through March 22, 2019.

370. Reinhardt filed a consent to opt into *Isaacs 1* on February 8, 2021. *Isaacs I*, ECF No. 22.

371. Reinhardt's written consent to join this action is attached as Exhibit 16.

372.     Reinhardt was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

373.     Reinhardt was paid straight-time for the overtime hours he worked for Defendants.

374.     Based on time and pay summaries provided by Defendants, Reinhardt is owed a total of $1,183.13 in unpaid overtime wages for work performed for Defendants from September 26, 2018, through March 22, 2019.

375.     Reinhardt is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

376.     **Scott Williams** was, at all relevant times, an employee of Defendants.

377.     Williams was an hourly employee of Defendants.

378.     Williams worked for Defendants from November 1, 2017, through January 6, 2020.

379.     Williams filed a consent to opt into *Isaacs 1* on February 8, 2021. *Isaacs I*, ECF No. 22.

380.     Williams' written consent to join this action is attached as Exhibit 17.

381.     Williams was paid at his regular hourly rate for all hours he worked for Defendants, even when working over 40 hours in a week.

382.     Williams was paid straight-time for the overtime hours he worked for Defendants.

383.     Based on time and pay summaries provided by Defendants, Williams is owed a total of $4,655.75 in unpaid overtime wages for work performed for Defendants from November 1, 2017, through January 6, 2020.

384.     Williams is entitled to an amount equal to his unpaid backwages for liquidated damages under the FLSA.

385.     **Dennis Harris** filed a consent to opt into *Isaacs 1* on March 8, 2021. *Isaacs I*, ECF No. 31.

386.     Based on Defendants' time and pay summaries, Isaacs and Opt-in Plaintiffs are owed a total of at least $23,806.84 in unpaid overtime wages for work performed for Defendants.

COLLECTIVE ACTION ALLEGATIONS

387.     Defendants' illegal "straight time for overtime" policy extends well beyond Isaacs and Opt-in Plaintiffs.

388.     It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *see also*, *e.g.*, *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

389.     Defendants have paid numerous hourly workers according to the same unlawful scheme.

390.     Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

391.     The workers impacted by Defendants' "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

392. Isaacs incorporates all other allegations.

393. By failing to pay Isaacs, Opt-in Plaintiffs, and the Putative Collective Members overtime at 1.5 times their regular rates, Defendants violated the FLSA. 29 U.S.C. § 207(a).

394. Defendants owe Isaacs, Opt-in Plaintiffs, and the Putative Collective Members the difference between the rate actually paid and the proper overtime rate.

395. Because Defendants knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Defendants owe these wages for at least the past three years.

396. Defendants also owe Isaacs, Opt-in Plaintiffs, and the Putative Collective Members an amount equal to the unpaid overtime wages as liquidated damages.

397. Isaacs, Opt-in Plaintiffs, and the Putative Collective Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## RELIEF SOUGHT

Wherefore, Isaacs prays for judgment against Defendants as follows:

(a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b) For an order finding Defendants liable for violations of state and federal wage laws with respect to Isaacs, Opt-in Plaintiffs, and all Putative Collective Members covered by this case;

(c) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Isaacs, Opt-in Plaintiffs, and all Putative Collective Members covered by this case;

(d) For a judgment awarding Isaacs, Opt-in Plaintiffs, and all Putative Collective Members covered by this case their costs of this action;

(e) For a judgment awarding Isaacs, Opt-in Plaintiffs, and all Putative Collective Members covered by this case their attorneys' fees;

(f)    For a judgment awarding Isaacs, Opt-in Plaintiffs, and all Putative Collective Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g)    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, Texas 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**